IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

EDITH MILESTONE,

                        Plaintiff,                        ORDER

     v.                                                    09-cv-199-slc

CITY OF MONROE,

                        Defendant.

---

The issue in this case has come down to whether defendant City of Monroe can be held liable under 42 U.S.C. § 1983 for a decision to ban plaintiff Edith Milestone from a public senior center. Although the parties raised many issues related to the merits in their cross motions for summary judgment, in an order dated December 11, 2009, I questioned whether I needed to resolve any of those issues because it appeared that plaintiff's banishment could not "fairly be said to represent official policy" of the city, which is the standard for municipal liability under § 1983. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978). A potential problem I noted was that the city itself never reviewed the decision to keep plaintiff out of the center; plaintiff had an opportunity to present her claim to the city council but she declined to do so. Plaintiff has responded to the December 11 order, in which I gave her an opportunity to show that my tentative conclusion was wrong. *See* dkt. 45. Because plaintiff's response fails to show that the city is the proper defendant in this case , I will deny plaintiff's motion for summary judgment and grant defendant's motion.

These are the relevant undisputed facts: Tammy Derrickson, the director of the senior center, informed plaintiff that she could not return to the center after an incident on October 23, 2008, involving a dispute plaintiff had with other visitors over the scoring of a card game. (Derrickson said that plaintiff "physically threatened" her; plaintiff denies this but does not deny that she was "complaining loudly" about her score.) In a letter Derrickson wrote the following day, Derrickson said that plaintiff's conduct had violated several provisions of a code of conduct recently enacted by the Senior Citizens Board that required visitors to be "respectful" and

prohibited them from engaging in "physically threatening conduct." The board held a hearing, where plaintiff was represented by counsel and was given the opportunity to testify on her own behalf. After deliberating, the board issued a decision in which it stated: "The Board affirms the decision of Senior Center Director Derrickson to ban Edith Milestone from Senior Center activities and programs. The Board will consider a petition for reinstatement by Edith Milestone upon proof of successful completion of an accredited 'Anger Management' program." In addition, the board informed plaintiff that she had 30 days to appeal its decision to the Monroe Common Council under Wis. Stat. § 68.09(5); if she did not appeal, the board's decision would be "final." Plaintiff did not file an appeal or take an anger management class.

The Supreme Court has enumerated several ways that a plaintiff may show that a municipality has a policy that is responsible for an alleged constitutional violation. The most obvious way is to point to a written policy enacted or adopted by the municipality. *E.g.*, *Owen v. City of Independence,* 445 U.S. 622, 650 (1980). A written policy *is* at issue in this case, but it is a policy of the Senior Citizens Board rather than the city itself. It is not clear whether the board even relied on the policy because it is not cited in the board's decision. In any event, plaintiff fails to develop a meaningful argument that the board's policies may be imputed to the city. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("[U]ndeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").

A second way to satisfy *Monell* is through a custom or practice. The rationale for this rule is that a municipality may be said to have an "unofficial" or unwritten policy if it fails to intervene despite repeated instances of the same conduct by its employees. *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007). Closely related to this method, a policy may be shown if the municipality demonstrated "deliberate indifference" to constitutional rights through a failure to train or supervise its employees or by a decision to hire an employee that it should have known would violate the Constitution in a particular way. *City of Canton v. Harris*, 489 U.S. 378 (1989);

*Board of County Commissioners of Bryan v. Brown*, 520 U.S. 397 (1997).  Again, plaintiff develops no argument that the city may be held liable under any of these rationales.

Finally, a municipality may be held liable under § 1983 for individual decisions it makes or for the decisions made by those to whom it delegates "final policymaking authority." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 483 (1986).  Plaintiff advances two arguments under this theory of liability.

First, plaintiff argues that the city delegated final policymaking authority to the board by allowing the board's decisions to be treated as "final" in the absence of an appeal to the city council.  This argument misunderstands the meaning of "final" under *Pembaur*.  A municipality does not bear responsibility under § 1983 for every decision that is "final" in the sense that no one challenged the decision; rather, in this context, "final" means "that there is no higher authority." *Gernetzke v. Kenosha Unified School Dist. No. 1*, 274 F.3d 464, 469 (7th Cir. 2001).  Of course, *every* decision by a public official ends somewhere, but this does not mean the city has adopted every decision made by its employees. This is the primary teaching of *Monell*: there is no respondeat superior under § 1983. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 126, (1988) ("If the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from respondeat superior liability").

It adds nothing to say that the city made a "policy decision" to treat the board's decisions as final when no one appeals.  As I noted in the order to show cause, in determining whether a decision maker has "final policymaking authority," the key question is whether review by a higher authority is *available;* it does not matter whether that review actually occurred. *Fiorenzo v. Nolan*, 965 F.2d 348, 352 (7th Cir. 1992) (policymaker's "failure to rescind the plaintiffs' transfers are insufficient to demonstrate that Chief Nolan was delegated final policymaking authority to set employment policy in the Sheriff's Police Department."); *see also Scala v. City of Winter Park*, 116 F.3d 1396, 1402 (11th Cir. 1997) (public officials do "not become final policymakers for § 1983 purposes simply because persons who disagree with their decisions have to file an appeal in order

to have those decisions reviewed"); *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992) ("To hold cities liable under section 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle respondeat superior liability into section 1983 law."); *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 638 (11th Cir. 1991) (no municipal liability when plaintiff failed to appeal adverse decision to city council). Plaintiff cites no authority to the contrary. The reason for this rule is that municipal liability must be traced to a "deliberate choice" made by the city. *Pembaur*, 475 U.S. at 483. Plaintiff cannot deprive the city of an opportunity to make that choice and then blame the city for violating her constitutional rights.

The bottom line is that the city did not review the decision of the board even though such review was authorized under the Wisconsin statutes. The city may have delegated authority to the board to make *decisions*, but it reserved final policymaking authority for itself. *Fiorenzo*, 965 F.2d at 350-51 ("[A] municipality is not liable merely because the official who inflicted the alleged constitutional injury had the discretion to act on its behalf; rather, the official in question must possess final authority to establish municipal policy with respect to the challenged action."). In other words, "permission does not [make] the permittee the final policymaking authority." *Gernetzke*, 274 F.3d at 469.

Alternatively, plaintiff argues that the city conceded responsibility for the decision in its answer when it admitted paragraph 12 in plaintiff's complaint: "The City of Monroe continues to exclude the plaintiff from the Behring Senior Center and from all programs and from all programs and activities there." Plaintiff's reliance on this "admission" is problematic for several reasons. To begin with, the issue raised by paragraph 12 is different from the one briefed in the parties' motions for summary judgment. Up until now, the focus has been whether the city violated plaintiff's rights by making the decision to kick her out the center, not whether the city could be held liable for enforcing the decision after the fact. It would not be appropriate at this

4

late date to allow plaintiff to shift the focus so dramatically, at least without giving the city an opportunity to respond.

Second, plaintiff may have waived this argument when she did not raise it in her summary judgment reply brief even though defendant argued in its brief in opposition that plaintiff could not meet the standard for municipal liability. Plaintiff identifies no reason for failing to bring this up sooner. Even if plaintiff had not waived the issue, admissions in an answer are not engraved in stone. Courts may allow parties to withdraw such admissions, particularly when it appears that the admission was made in error. *Sullivan v. William A. Randolph, Inc.*, 504 F.3d 665, 669 (7th Cir. 2007). Presumably, when the city admitted this paragraph in its answer, it was focusing on the allegation that plaintiff was still banned from the center rather than the person or entity responsible for the ban.

In any event, a party may admit a question of fact, but not a question of law. As the Supreme Court recently made clear in *Ashcroft v. Iqbal*, 129 S. Ct. 137 (2009), a court may not accept as true conclusions of law in a complaint or even conclusory factual allegations. *Id.* at 1950 ("[C]onclusions . . . are not entitled to the assumption of truth.") Plaintiff's allegation that "the City of Monroe" is responsible for her continued exclusion from the center is a conclusion, not a fact. This is shown by plaintiff's failure to include the slightest hint in her complaint (or her summary judgment materials) regarding what act or acts the city has taken to keep her out of the center. Although a city may be held liable even for individual acts, the plaintiff must at least identify what that act is to survive a motion for summary judgment. *Drake v. Minnesota Mining & Manufacturing Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted."). To the extent plaintiff means to argue that the city has "ratified" the board's decision simply by refusing to overrule the board's decision after plaintiff filed this lawsuit, the court of appeals has rejected this theory of liability. *Gernetzke*, 274 F.3d at 469-70.

Finally, plaintiff argues that it is improper to dismiss this case for plaintiff's failure to appeal the board's decision to the city council because § 1983 does not have an exhaustion requirement. *Felder v. Casey*, 487 U.S. 131 (1988). Although plaintiff is correct that she was not required to exhaust her administrative remedies against the city, she *is* required to show that the city made a policy choice to keep her out of the center. If plaintiff had wanted to sue Derrickson, she could have done so as soon as Derrickson made her decsion. If she wanted to sue the board members, she could have done that after they issued their decision. However, plaintiff chose to sue the city itself, even though the city had not yet weighed in on the dispute. *Gernetzke*, 274 F.3d at 467 ("[A]n initial puzzle is why the plaintiffs did not sue the individual defendants in their individual capacities, where they would not face the *Monell* issue that we discuss below and show is fatal to the claim regardless of the claim's merits.")

In closing, I note that it is unlikely that the result of this case would be any different even if I concluded that the board's decision represents city policy. Although the board did not explain the reasoning for its decision, by affirming Derrickson's decision the board presumably was agreeing with Derrickson's version of events. This conclusion is supported by the qualification on the board's decision, which allowed reconsideration after plaintiff took an anger management class. It is further supported by the deposition of William Schwaiger (the chairman of the senior citizens board), who testified that the board *did* find Derrickson more credible than plaintiff and that the board concluded that "the problem" was plaintiff's "explosive nature" and "anger." *See* dkt. 29-2, at 22-24.

To the extent plaintiff is relying on the actions of the board to establish liability, she would be required to show that the *board members* had an unconstitutional motive when they voted to uphold Derrickson's decision; it would not be enough to show that Derrickson violated plaintiff's rights. *Waters v. City of Chicago*, 580 F.3d 575, 584-86 (7th Cir. 2009) (plaintiff must prove "that the policymaker approved of the unconstitutional motive"). Although plaintiff disputes Derrickson's version of events, she has adduced no evidence to support a view that the board did

6

not genuinely believe Derrickson's testimony that plaintiff acted in a physically threatening manner. Thus, I must assume that the board banned plaintiff from the center not because it was trying to suppress dissent, but because it believed that plaintiff posed a safety concern. Plaintiff cannot argue that threats are protected by the Constitution or that the city must wait for an assault to occur before it takes action. *Nuxoll ex rel. Nuxoll v. Indian Prairie School Dist. # 204*, 523 F.3d 668, 670-71 (7th Cir. 2008) (discussing continuing validity of "fighting words" doctrine).

Even if one considers the undisputed facts only, this leaves the undisputed fact that plaintiff was "complaining loudly" about her score. Even with respect to protected speech, the government has a right to regulate the manner of the speech, so long as it is unrelated to viewpoint. *Brandt v. Board of Educ. of City of Chicago*, 480 F.3d 460, 466 (7th Cir. 2007); *Gilles v. Blachard*, 477 F.3d 466 (7th Cir. 2007). The city has a legitimate interest in minimizing disruption and keeping the center a pleasant environment for its visitors. *Ward v. Rock Against Racism*, 491 U.S. 781 (1989) (upholding noise restriction against First Amendment challenge).

## ORDER

It is ORDERED that plaintiff Edith Milestone's motion for summary judgment, dkt. 16, is DENIED. Defendant City of Monroe's motion for summary judgment, dkt. 18, is GRANTED. The clerk of court is directed to enter judgment in favor of the city and close this case.

Entered this 8th day of January, 2010.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge